## Dietz Estate

*Albert G. Blakey III,* for petitioners.
*David C. Keiter,* for respondent.

MILLER, *J.,* December 12, 1991—This matter is before the court on petition of Elwood C. Dietz, surviving executor of the estate of Mamie Irene Dietz, for permission to file an after-discovered codicil to the last will and testament of Mamie Irene Dietz. Respondent is Wendy C. Staub, formerly Wendy C. Dietz, granddaughter of Mamie Irene Dietz and half-sister to the remaindermen in the estate, Michelle Yvonne Dietz, Dawn D. Dietz, Glenn William Dietz and Marcy Jo Dietz.

The facts of this case are as follows. Mamie Irene Dietz, testatrix in this case, was mother of Glenn H. Dietz, Elwood C. Dietz and Charles Dietz. Glenn H. Dietz was married twice. His first marriage produced a daughter, the respondent. Glenn Dietz divorced and remarried. His second marriage produced four children, namely, Dawn C. Dietz and Marcy Jo Dietz. Respondent lived with her father on the farm until she was approximately 16 years old, at which time she left to

live with her mother. Respondent lived on the farm with her father and half-siblings again for about five months when she was 18 years old. On May 9, 1983, respondent instituted an action against her father and grandmother, the testatrix, over an on-going dispute concerning the boarding and ownership of a horse. By that time, Wendy had become estranged from her father and lived separate from her father again. The suit culminated in an arbitration decision favorable to Wendy on October 30, 1983.

Mamie Irene Dietz executed her last will and testament on January 24, 1974. Her will named Glenn H. Dietz and Elwood C. Dietz as co-executors and provided that Charles W. Dietz would receive tract no. 2. The will also provided that Glenn and Elwood would share equally the balance of the estate while both lived, with a life estate remainder going to the survivor of the two. Upon the death of the survivor, the remainder of the balance of the estate would pass to Glenn's children.

On March 31, 1983, Glenn H. Dietz informed Samuel S. Laucks Jr., Esquire, that Mamie Irene Dietz wished that he prepare a codicil to her will. Attorney Laucks, who served as attorney for both Mamie and Glenn Dietz, prepared a codicil as Mamie Dietz wished and delivered a copy to Glenn Dietz for Mamie's approval. Attorney Laucks advised Glenn that Mamie should come into his office to execute the codicil. Mamie never executed the codicil at attorney Laucks' office. Attorney Laucks testified that about one year later he mailed to Mamie an unexecuted copy of the codicil with a letter and a bill for the services of composing the codicil. He also testified that he had learned through

others that Mamie was upset with Wendy for suing her own father. The codicil in question states that it is the first codicil to Mamie Irene Dietz's last will and testament dated January 24, 1974. It provides that Wendy C. Dietz (now Staub) receive the sum of $1 and that her name be otherwise deleted wherever it appears as a beneficiary in the will, particularly in Article II, item B and C, so that she shall not share in any part of the estate. The codicil otherwise ratifies and reaffirms Mamie's will of 1974.

On September 11, 1984, Mamie Irene Dietz died. On May 21, 1989, Glenn H. Dietz died, survived by Elwood C. Dietz, Glenn's co-executor under Mamie's will. On or about August 26, 1990, Dawn D. Dietz, granddaughter of Mamie and daughter of and executrix for the estate of Glenn H. Dietz, found an executed copy of Mamie's codicil while searching in a green plastic bag containing assorted personal papers of Mamie and Glenn Dietz which had been collected from her house in October 1990. Elwood C. Dietz and Dawn D. Dietz informed attorney Laucks that in August they had found a signed codicil to Mamie's will in Glenn's papers after his death.

On February 11, 1991, Elwood, as surviving executor of Mamie's estate, filed the instant petition to probate Mamie's codicil. With this petition, he filed a consent and agreement signed by the other four of the five original residuary heirs of Mamie's estate, namely, Glenn's four children by his second marriage. On March 13, 1991, respondent Wendy C. Staub filed an answer and new matter to why the undated first codicil should not be admitted to probate. Thereafter, on April 1, 1991, petitioner Elwood C. Dietz filed an answer to defendant's new matter and petitioner's new matter

regarding his original petition. Respondent filed a reply to new matter of petitioner's on April 17, 1991. This court held an evidentiary hearing on the matter September 5, 1991.

Respondent's first contention is that the codicil cannot be admitted to probate because it is barred by the three-month statute of limitations set out in 20 Pa.C.S. §3138 (as amended 1972) (entitled "later will or codicil"), for appeals from probate of a will. Petitioner, proponent of the codicil, conversely contends the codicil may be admitted to probate beyond the statutory limitations period especially where, as in this case, there will be no prejudice to any parties because the estate has not yet been distributed but is held intact during petitioner's life estate.

We agree with petitioner that we may admit this codicil to probate despite the limitations period. Section 3138 provides in pertinent part:

"If a later will or codicil is submitted to the register for probate within three months of the testator's death but after the register shall have probated an earlier instrument, the register ... shall have power to open the probate record, receive proof of the later instrument ... and amend his probate record, (as amended 1972)."

The Pennsylvania courts have split over interpretation of this provision. See e.g., *Dempsey v. Figura,* 374 Pa. Super. 347, 542 A.2d 1388 (1988); *Caldwell Will,* 20 Pa. Fiduc. 50 (C.P. Allegheny 1969); *Vanko Estate,* 8 Pa. Fiduc. 217 (C.P. Allegheny 1958) (Statute of limitations for appeals from probate is mandatory and may be avoided only where probate record is uncertain or where a forgery or fraud is alleged); see contra, *Sebik's Estate,* 300 Pa. 45 (1930) (Dicta indicating the statute of limitations does not apply to codicils found subsequent to probate of a prior will, only to subsequent

wills); *Grover Will,* 8 Pa. Fiduc. 2d 27 (C.P. Blair 1987) (Statute of limitations does not bar admission to probate of a purportedly valid codicil); *Heffner Will,* 1 Pa. Fiduc. 2d 300 (C.P. York 1981), *aff'd mem.,* 321 Pa. Super. 569, 468 A.2d 827 (1983) (Will admitted to probate 12 years after death); *Murphy Will,* 8 Pa. Fiduc. 494 (C.P. Allegheny 1969); *Hetzel's Estate,* 87 Pitts. L.J. at 502-03; *Palm Estate,* 1 Pa. Fiduc. 572 (C.P. Dauphin 1951) (Limitations period does not prevent appeal from probate after limitations period has expired if laches do not apply and if no account has been filed, no distribution has been made and therefore, no prejudice has resulted to any interested party); *Keiper Will,* 8 Pa. Fiduc. 647 (C.P. Monroe 1958); *Frank Estate,* 56 D.&C.2d 251 (1970).

After reviewing the law, we find compelling those decisions liberally construing the limitations period to "give effect to the provable intent of the testator," *Grover Will,* 8 Pa. Fiduc. 2d at 31 (C.P. Blair 1987). We likewise hold that, under the facts of this case, the admission to probate of a purportedly valid codicil is not barred by any limitation period. We so hold especially in light of the fact that, other than a specific bequest of tract no. 2 to Charles Dietz pursuant to Mamie's will, her estate balance remained intact during Elwood's life and therefore no distributions have been made which could be affected by the codicil.

We must next address whether the proponents of the codicil have established prima facie evidence that the codicil is a valid testamentary writing. At the inception of the petition to admit the purported codicil to probate, the petitioner bears the burden of proof by a preponderance of the evidence that the formalities of execution of the codicil have occurred. See, e.g., Tredinnick, "Presumptions and Burden of Proof in

Orphans' Court Litigation" 7 Pa. Fiduc. 2d 102-125 (1986). Once execution is prima facie established a presumption of validity arises and the burden shifts to the contestant to prove undue influence by clear and convincing evidence. *Id.; Estate of DiPietro,* 306 Pa. Super. 238, 452 A.2d 532 (1982). To prove undue influence, the contestant must by clear and convincing evidence establish each of three elements: (1) that the proponent of the codicil will thereby receive a disproportionate gift, (2) that the testatrix, Mamie Irene Dietz, suffered from a weakened intellect at the time she executed the codicil, and (3) that the proponent and testatrix shared a confidential relationship. *Id.*

We note that a writing need not assume any particular form to be couched in language technically appropriate to its testamentary character to take effect as a will or codicil. *Hengen's Estate,* 337 Pa. Super. 547, 12 A.2d 119 (1940). Instead, if the instrument is in writing and signed by the decedent at the end thereof, and is an otherwise legal declaration of his intention to make a disposition upon his death, the instrument must be given effect as a will or codicil. *Hengen's Estate, supra.,* (Where evidence discloses that an instrument found with a will was executed subsequent to the will, the instrument will be a valid codicil despite that it is undated, so long as it is signed). See also *Lohr Estate,* 35 D.&C.2d 311 (1964) (Where proponent has established prima facie evidence that an after-discovered paper was testamentary and was signed by the testatrix at the time of or after executing the probated will, probate may be opened to permit the paper to be offered for probate).

Petitioner has established prima facie evidence that the codicil was validly executed. Although the codicil in question is undated, it refers to Mamie Irene Dietz's

last will and testament dated January 24, 1974. Attorney Laucks essentially testified that he prepared the codicil sometime in early 1983. We may therefore conclude that the codicil was executed by Mamie sometime between early 1983 and Mamie's death in late 1984. The codicil is signed by Mamie Irene Dietz. Attorney Laucks, Dawn D. Dietz and Elwood C. Dietz each testified that they were familiar with Mamie's signature and that it was her signature on the codicil. We are satisfied that the petitioners have sustained their burden of showing the codicil to be a valid testamentary writing.

Furthermore, we agree with the petitioner that the respondent has not shown clear and convincing evidence of undue influence to rebut the presumption of validity. We note that, as to one prong of the undue influence trilogy, respondent has shown that both Glenn H. Dietz and Elwood C. Dietz shared a confidential relationship with Mamie in their capacities as co-executors of her estate.

However, as to the second prong of undue influence, whether respondent contends that Glenn H. Dietz or Elwood Dietz is the proponent of the codicil, she has not shown that either would have benefited personally from a disproportionate gift under the codicil. Regardless of Wendy's inclusion in or exclusion from the estate, Glenn's and Elwood's shares in the estate were life estates which remained unaffected. We do not believe that the fact Glenn Dietz's other four children would receive proportionately larger shares satisfied the requirement that the respondent prove petitioner has received a disproportionate gift.

We likewise find that the respondent has not sustained her burden of proof that Mamie suffered a weakened intellect when she executed the codicil. We first point out the codicil is undated and it is therefore impossible

to establish exactly the time of it's execution. Additionally, respondent's testimony does not demonstrate Mamie was ever in such a condition in the years preceding her death. Respondent testified that Glenn Dietz ran Mamie's horse farm and handled the paperwork and that he had told respondent he would "have her written out of the will." Respondent offered no evidence of Mamie's intellectual condition. Furthermore, testimony by petitioner's witness, JoAnn Sobol, a granddaughter of Mamie through Charles Dietz, indicated that she was with Mamie frequently the last two years of her life and that, while Mamie needed help with transportation, she handled her own banking and affairs and that she "had a mind of her own." Attorney Samuel S. Laucks Jr. testified he learned through others that Mamie was upset with Wendy for suing her father. He stated that he knew of no power of attorney given by Mamie to Glenn or to anyone else. Dawn D. Dietz testified Mamie suffered a short illness just prior to her death. Taken as a whole, the evidence produced at the hearing does not indicate clearly or convincingly that Mamie suffered from a weakened intellect at any time or that the codicil reflected Glenn's rather than Mamie's intent.

Having found that respondent has failed to prove two of the three elements required to establish undue influence, we hold that the presumption of validity has not been rebutted and the codicil remains a valid testamentary writing.

Finally, we address respondent's contention that the proponents are guilty of laches in that Elwood, as surviving executor of Mamie's estate failed to submit the codicil to probate with the will. Instead, respondent urges, the executrix of Glenn's estate submitted the

codicil in August 1990, six and one half years after the death of decedent.

Laches will apply not because a certain, definite time has elapsed but because, under the circumstances of a given case, the complaining party is guilty of want of due diligence in failing to act, to another's prejudice. *Keefauver Estate,* 359 Pa. Super. 336, 342, 518 A.2d 1263, 1266 (1986), *citing In re Estate of Marushak,* 488 Pa. 607, 413 A.2d 649 (1980). Laches is not avoided by the excuse, "I did not know." If a fact could have been ascertained through diligence, then claimed lack of knowledge is no excuse for a stale claim. *Mershon Estate,* 364 Pa. 549, 73 A.2d 686 (1950). "The test is not what the plaintiff knows, but what he might have known ... [through] information within his reach, with the vigilance the law requires of him." *Id.* at 551, 73 A.2d at 687. However, delay which injures no one will not furnish a reason for refusing relief. *Keefauver Estate, supra., citing In re Myer's Estate,* 173 Pa. Super. 592, 98 A.2d 444 (1953).

We reject respondent's contention that laches bars probate of this codicil. Respondent has not shown that Elwood Dietz failed to use due diligence in submitting the codicil to probate once he knew of its existence or that the means to discover it were within his control. He reported its existence to attorney Laucks within one month of its discovery. Finally, respondent has pointed to no prejudice to her position caused by the period of delay from late August 1990 to February 1991, in admitting the codicil to probate. Nor do we believe the four-month delay to be an egregious delay prejudicial to respondent.

As attorney Laucks testified, Mamie Irene Dietz's estate is presently subject to the life estate of Elwood Dietz and therefore no distributions have been made. We can understand the disappointment of Wendy in being written out of her grandmother's will by way of the late codicil. However, the action of the testatrix is not difficult to understand in light of circumstances. Wendy, in filing a lawsuit against her grandmother, in all likelihood invited the dispository change. In essence, she may have won the battle but lost the war.

Having found the after-discovered codicil is a valid testamentary writing, and having a rejected respondent's contentions, we hereby grant petitioner permission to file the after-discovered codicil in probate.

## ORDER

And now, December 12, 1991, the petition for permission to file the after-discovered codicil of Mamie Irene Dietz for probate is hereby granted. Any motions for post-trial relief must be filed within 10 days of the date of the entry of this order.